UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JAIRO MANUEL CASTILLO CORTES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00312-JRO-MG |
| | ) | |
| MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, SAMUEL OLSON, Field Office Acting Director of Enforcement and Removal Operations, Chicago Field Office, Immigration and Customs Enforcement, BRISON SWEARINGEN, Sheriff/Warden of the Clay County Justice Center, TODD BLANCHE, Acting U.S. Attorney General, U.S. DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, | )))))))))))))) | |
| | ) | |
| Respondents. | ) | |

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

The Immigration and Nationality Act ("INA") not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability. The main issue in this case is whether the Petitioner, Jairo Manuel Castillo Cortes, falls into the category of aliens subject to mandatory detention. He does under 8 U.S.C. § 1225(b)(2)(A). As such, his detention without bond pending removal proceedings does not violate the INA or its regulations governing bond determinations. Moreover, Petitioner's current detention does not violate the Fifth Amendment's Due Process Clause.

Petitioner has filed a motion to amend his habeas petition to add arguments related to his December 2022 parole.  Dkt. [9].  The Court **GRANTS** the motion.  The amended petition, dkt. 9-1, shall supersede the original.  Respondents addressed all the issues raised in the amended petition, including Petitioner's parole, in their surreply, so no further briefing is required.  Because Petitioner's parole had expired at the time of his April 2026 arrest and detention, Respondents did not violate any laws by detaining him or informing him that parole had been revoked.  The Court therefore **DENIES** the amended Petition for Writ of Habeas Corpus.  Dkt. [9-1].

## I. BACKGROUND

### A.    Factual Background

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence.  *See* 28 U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of Nicaragua.  Dkt. 9-1 at 5; Dkt. 8 at 2; Dkt. 8-1 at 1.  On or about December 12, 2022, he entered the United States without inspection.  Dkt. 9-1 at 13; Dkt. 8 at 2; Dkt. 7-1 at 2.  He was apprehended by U.S. Border Patrol agents near El Paso, Texas, and released on parole shortly thereafter pursuant to 8 U.S.C. § 1182(d)(5) because no detention space was

2

available.  Dkt. 12 at 1; Dkt. 8 at 2; Dkt. 8-1 at 2.  Petitioner has been living in the country since then.  Dkt. 9-1 at 13–14.  At some point, Petitioner applied for asylum.  Dkt. 12 at 2.

On April 28, 2026, Petitioner appeared for a "check-in" appointment at an ICE office in Chicago.  Dkt. 9-1 at 13; *see* Dkt. 8-1 at 2.  DHS initiated removal proceedings by issuing Petitioner a Notice to Appear ("NTA").  Dkt. 8 at 2; Dkt, 8-1 at 2, 4–6.  ICE officers then took him into custody pursuant to an I-200 warrant.  Dkt. 8 at 2; Dkt. 8-1 at 2, 7.  Petitioner was also formally served with written notice that his parole had been revoked pursuant to 8 C.F.R. § 212.5(e).  Dkt. 8 at 2; Dkt. 8-1 at 8; Dkt. 12 at 2.  The letter stated that "[n]either urgent humanitarian reasons nor significant public benefit warrant your continued parole at this time."  Dkt. 8-1 at 8.  The NTA charges state that Petitioner is removable based on 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").  *Id.* at 4.

After his arrest in Chicago, Petitioner was processed and transferred to the Clay County Justice Center in Brazil, Indiana.  Dkt. 9-1 at 13; Dkt. 12 at 2.  Petitioner was detained there when he commenced this habeas action.  Dkt. 9-1 at 13.  He names as Respondents Samuel Olson, Field Office Acting Director of Enforcement and Removal Operations, Chicago Field Office, Immigration and Customs Enforcement; Brison Swearingen, Sheriff/Warden of the Clay County Justice Center; Markwayne Mullin, Secretary of the U.S. Department of

Homeland Security; the U.S. Department of Homeland Security; Todd Blanche, Acting U.S. Attorney General; and the Executive Office for Immigration Review (EOIR).  Dkt. 9-1 at 5–6.

**B.     Statutory Background**

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and 8 U.S.C. § 1226.  While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

Key to Section 1225 is its definition of "applicant for admission."  Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted." 8 U.S.C. § 1225(a)(1).  The Supreme Court has explained that "applicants for admission fall into one of two categories"—"those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez,* 583 U.S. 281, 287 (2018).

Section 1225(b)(1) requires the detention and "expedited removal" of certain applicants for admission.  *See Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 108–09 (2020).  An applicant is subject to expedited removal if he is "arriving in the United States" and determined by an immigration officer to be "inadmissible" because of fraud, misrepresentation, or lack of valid entry documentation.  8 U.S.C. § 1225(b)(1)(A)(i).[1]  Upon such determination, the

---

[1] "[C]ertain other aliens" are also subject to expedited removal, including any aliens "designated by the Attorney General" who have "not been admitted or paroled into the United States, and who [have] not affirmatively shown, to the satisfaction of an

officer "shall order the alien removed from the United States without further hearing or review *unless* the alien indicates either an intention to apply for asylum . . . or a fear of persecution." *Id.* (emphasis added). Where an alien claims asylum, the immigration officer "shall refer" the alien to an asylum officer for an interview to determine whether he has a "credible fear of persecution." *Id.* § 1225(b)(1)(A)(ii), (B)(ii). Aliens determined to have a credible fear of persecution "shall be detained for further consideration of the application for asylum" in a standard removal hearing. *Id.* § 1225(b)(1)(B)(ii); *see Thuraissigiam*, 591 U.S. at 109 (citing 8 C.F.R. § 208.30(f)). Aliens determined to lack a credible fear of persecution are subject to expedited removal and shall be detained "until removed." *Id.* § 1225(b)(1)(B)(ii).

Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Jennings*, 583 U.S. at 287. With exceptions not relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In other words, detention is mandatory pending "the usual removal process," which "involves an evidentiary hearing

---

immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" for fraud, misrepresentation, or lack of valid entry documentation. 8 U.S.C. § 1225(b)(1)(A)(iii)(I)–(II).

before an immigration judge" where "an alien may attempt to show that he or she should not be removed." *Thuraissigiam*, 591 U.S. at 108.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien "falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II. DISCUSSION

Petitioner seeks release from detention while he awaits his removal proceedings because he contends he is detained pursuant to a recent, unlawful policy shift by Respondents. Respondents rely upon Section 1225(b)(2)(A) to detain Petitioner without a bond hearing pending his removal proceedings because they argue he is an "applicant for admission." Petitioner argues that Section 1226(a) governs his detention and that he not only has a right to a bond hearing but is entitled to immediate release. Dkt. 9-1 at 17; *see also* dkt. 12 at 12. He also brings a claim under the Fifth Amendment's Due Process Clause. Ultimately, he is not entitled to the relief he seeks.[2]

---

[2] Petitioner argues that his arrest violated a settlement agreement providing that an ICE arrest in an ERO Chicago jurisdiction is only valid if pursuant to an NTA and I-200 warrant. Dkt. 9-1 at 16; *see Castañon-Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823 (N.D. Ill. Oct. 7, 2025). Respondents present evidence that Petitioner was issued an NTA and I-200 warrant. Dkt. 8 at 2; *see* Dkt. 8-1 at 2, 4–7. On reply, Petitioner

A.    *Castañon-Nava* **does not control this case.**

As a preliminary matter, Respondents alerted the Court to the Seventh Circuit's recent opinion in *Castañon-Nava v. U.S. Department of Homeland Security*, 175 F.4th 828 (7th Cir. 2026).  *See* Dkt. 10.  *Castañon-Nava* includes a fulsome discussion of the Section 1225(b)(2)(A) issue presented in the petition. Respondents argue that the *Castañon-Nava* opinion confirms that the Seventh Circuit has yet to issue binding precedent resolving the scope of Respondents' mandatory detention authority under Section 1225(b)(2)(A).  Dkt. 10 at 1–2. Petitioner argues in return that *Castañon-Nava* leaves "no legal ground to detain [him]" and that Respondents' interpretation of Section 1225(b) "runs directly into conflict with the Seventh Circuit."  Dkt. 12 at 3–6.  This is incorrect.  The Court agrees with Respondents' position.

On the scope of the "government's ability to detain noncitizens pursuant to its authority under § 1225(b)(2)(A)," 175 F.4th at 842, *Castañon-Nava* is a fractured 1–1–1 opinion.  Judge Lee confronted the defendants' Section 1225(b)(2)(A) argument and disagreed with it, while acknowledging that "his colleagues . . . believe that we should not reach this issue."  *Id.* at 842–56 (Lee, J.).  Judge Pryor concluded that it was not necessary for the Court to "reach[] the merits of the Plaintiffs' argument that the Defendants' interpretation of 8 U.S.C. § 1225(b)(2)(A) is improper," declining to join that portion of Judge Lee's

concedes the issuance of an NTA and I-200 warrant but argues that the NTA was "factually incorrect" (as it ignores his 2022 temporary parole).  Dkt. 12 at 2 & n.2.  But, as discussed below, Petitioner was not "paroled" into the country at the time of his April 2026 detention, as the parole had expired in 2023.  Dkt. 13 at 1.  Because the 2026 NTA was not defective, Petitioner is not part of the *Castañon-Nava* settlement class.

opinion and voting to resolve the case on other grounds. *Id.* at 857 (Pryor, J., concurring in part and concurring in judgment); *see id.* at 860–63. And Judge Kirsch concluded in his dissent that the defendants' reading of Section 1225(b)(2)(A) is correct. *Id.* at 871–77 (Kirsch, J., dissenting). The portion of the merits opinion in *Castañon-Nava* addressing the meaning and applicability of Section 1225(b)(2)(A) is, therefore, not a precedential holding of the Seventh Circuit,[3] and both Judge Lee's and Judge Kirsch's opinions are persuasive authority on this issue. While the reasoning in these opinions does not arise from the procedural posture of this case (i.e., a habeas petition directly challenging the Respondents' application of Section 1225(b)(2)(A) to the petitioner), both warrant serious consideration. The same is true of the many orders from this District that have deferred to Judge Lee's reasoning in the *Castañon-Nava* stay opinion,[4] which mirrors his reasoning in his merits opinion

---

[3] The Seventh Circuit's discussion of Section 1225(b)(2)(A) in its emergency stay order in *Castañon-Nava*, 161 F.4th 1048, is also not binding precedent. As the merits opinion in *Castañon-Nava* all but confirms, the stay order's discussion of Section 1225(b)(2)(A) is dicta because it was not essential to the resolution of the stay order or the merits. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66–67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."). Further, decisions from motions panels at the stay stage, even those directly on point, are "not entitled to the weight of a decision made after plenary submission" because they are "summary in character" and "made often on a scanty record." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).

[4] *See, e.g.*, *Alejandro v. Olson*, 817 F. Supp. 3d 672, 683 (S.D. Ind. 2025) ("The phrase 'seeking admission,' . . . means that a noncitizen must be actively 'seeking' 'lawful entry.'" (internal citation omitted)); *Campos Leon v. Forestal*, No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sep. 22, 2025) ("Meanwhile, the respondents' contention that Mr. Campos Leon's detention is mandatory under § 1225(b)(2) is, at best, incomplete. Assuming for the sake of argument that Mr. Campos Leon is an 'applicant for admission,' the respondents has not explained how he is 'seeking admission' such that § 1225(b)(2) applies."). Opinions of other judges in this District do not bind this Court. *Trump v. CASA, Inc.*, 606 U.S. 831, 858 n.17 (2025) (citation

and three other recent opinions from the Second, Sixth, and Eleventh Circuits. *See Da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Alvarez v. Warden*, 175 F.4th 1258 (11th Cir. 2026).

Respectfully, and for the reasons explained below and in this Court's prior orders, *e.g.*, *Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026), this Court reads Section 1225(b)(2)(A) in line with Judge Kirsch's merits opinion in *Castañon-Nava*, which is consistent with the reasoning of the Fifth and Eighth Circuits addressing the precise issue on the merits in habeas actions. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).[5]

## B. Petitioner is not entitled to a bond hearing because Section 1225(b)(2)(A) mandates his detention pending removal proceedings.

Section 1225(b)(2)(A)'s plain terms require Petitioner's detention pending his removal proceedings. When engaging in statutory interpretation, the Court "start[s] with the text of the statute to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation and citation omitted). In determining a statute's plain meaning, the Court is guided by the

---

omitted) ("[D]istrict court opinions lack precedential force even vis-à-vis other judges in the same judicial district.").

[5] *See also Rayo v. Olson*, No. 2:25-cv-2064-BHL, 2026 WL 594079 (E.D. Wis. Mar. 3, 2026); *Hernandez v. Olson*, No. 2:25-cv-1670-BHL, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026); *Rodriguez v. Olson*, 814 F. Supp. 3d 945 (N.D. Ill. 2026) (Pacold, J.); *Ugarte-Arenas v. Olson*, No. 2:25-cv-1721-WCG, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025), *appeal docketed*, No. 26-1023 (7th Cir. Jan. 7, 2026); *Rojas v. Olson*, No. 2:25-cv-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), *appeal docketed*, No. 25-3127 (7th Cir. Nov. 25, 2025).

statutory language at issue and the language and design of the statute as a whole. *Id.* at 852. Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ." *Id.*

To start, Petitioner is an "applicant for admission." The term is expressly defined in the statute as follows: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed the border, that definition is broader. "[A]pplicant for admission" includes any unadmitted alien present in the United States no matter when they entered or how long they have been here. *See Buenrostro-Mendez*, 166 F.4th at 502 ("Presence without admission deems the petitioners to be applicants for admission."). There is no dispute that Petitioner is an alien who is present in the United States and has not been admitted. He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2). *Jennings*, 583 U.S. at 287. Section 1225(b)(1) does not apply to Petitioner here. *See* Section I.B, *supra*. Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt

entitled to be admitted."  Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country.  Thus, Section 1225(b)(2)(A) mandates his detention pending removal proceedings.  *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220, 229 (BIA 2025) (holding that immigration judge "lacked authority to hear" alien's bond request "because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings").

Petitioner raises several arguments rejecting this straightforward application of Section 1225 to argue that Section 1226(a)'s bond redetermination provision applies instead.  The Court does not find these arguments persuasive.

First, Petitioner argues that Section 1225(b)(2)(A) applies only to those aliens "arriving at U.S. ports of entry or who recently entered the United States." Dkt. 9-1 at 13.  By contrast, on Petitioner's reading, Section 1226(a) "applies by default to all persons 'pending a decision on whether the [noncitizen] is to be removed from the United States.'"  *Id.* at 12 (alteration in original) (quoting 8 U.S.C. § 1226(a)); *see* Dkt. 10 at 6–7.  But general characterizations of a statute's overall purpose cannot substitute for its specific and plain words.  *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text.").  As this Court discussed in a prior Order, Section 1225 concerns "applicant[s] for admission," which is a clearly defined term that includes but is

11

not restricted only to arriving aliens or other recent border crossers.  *Demir*, 2026 WL 706485, at *5.

The Supreme Court did not hold otherwise in *Jennings v. Rodriguez*.  That decision repeatedly stated that it was summarizing Sections 1225 and 1226 in "general" terms.  *See Jennings*, 583 U.S. at 287 ("That process of decision *generally* begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." (emphasis added)); *id.* at 288 ("Section 1226 *generally* governs the process of arresting and detaining [aliens inside the United States] pending their removal." (emphasis added)).  *Accord Buenrostro-Mendez*, 166 F.4th at 505; *Avila*, 170 F.4th at 1136–37.

Granted, it is beyond question that Section 1225 applies to "arriving aliens."  Section 1225, however, does not apply *only* to arriving aliens but to all non-admitted aliens present in the country, regardless of when they arrived.  Any argument based on how this statute applies in many or even most cases does not tell us anything about what it means in every case, and specifically, nothing about what it means when applied to the facts before the Court today.

Second, Petitioner argues that Section 1225 does not apply because "[t]he statute's entire framework is premised on inspections at the border of people who are 'seeking admission' to the United States."  Dkt. 9-1 at 13.  The Court has previously rejected this argument.  *See Demir*, 2026 WL 706485, at *4; *Singh v. Swearingen*, No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026).  Read most plainly, the term "seeking admission" is simply a

12

synonym for applying for admission.  And applying for admission is a participial form of the noun "applicant for admission."  *See Buenrostro-Mendez,* 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila,* 170 F.4th at 1134 ("When a person applies for something, they are necessarily seeking it." (cleaned up)).[6]  And that is what Petitioner is seeking now, regardless of when he arrived or how long he has lived in the United States.

Third, Petitioner argues that Section 1226, not Section 1225(b)(2)(A), "applies to people like Petitioner" who "face charges of being inadmissible to the United States, including those who are present without admission or parole." Dkt. 9-1 at 13.  Petitioner argues that *all* aliens arrested and placed in removal proceedings and charged as being inadmissible are entitled to a bond hearing under Section 1226(a) provided they have not committed certain criminal offenses listed in 8 U.S.C. § 1226(c).  *Id.*  This argument both overlooks the text of Section 1225(b)(2)(A)—stating the applicant for admission "shall be detained" for removal proceedings—and misunderstands the provision's relationship with Section 1226(a).

"[I]t is a commonplace of statutory construction that the specific governs the general[,]" especially when construing comprehensive statutory schemes—

---

[6] The Court incorporates by reference its more fulsome statutory interpretation of "seeking admission" in 8 U.S.C. § 1225(b)(2)(A) as set forth in *Demir,* 2026 WL 706485, at \*3–5, *Singh,* 2026 WL 847715, at \*5–7, and *Gonzalez-Lopez v. Swearingen,* No. 2:26-cv-00200-JRO-MG, 2026 WL 1270065, at \*7–8 (S.D. Ind. May 8, 2026).

like the INA—that are often interspersed with "specific solutions" to "specific problems." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992), and *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)).  "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission.  To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel*, 566 U.S. at 645.  "[T]he canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one." *Id.*

Here, the INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every "applicant for admission" must be detained without a bond hearing, 8 U.S.C. § 1225(b)(2)(A).  The specific is the exception to the general, and it applies to Petitioner in this case. *Accord Rodriguez v. Olson*, 814 F. Supp. 3d 945, 958 (N.D. Ill. 2026) (applying general/specific canon to enforce Section 1225(b)(2)(A) over Section 1226(a)); *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 WL 501113, at *8 (N.D. Ala. Feb. 23, 2026) (same).

Applying the general/specific canon here is consistent with the plain text and structure of Section 1225 and 1226.  Section 1226(a) is permissive: "[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added).  In other words, the Executive is free to exercise its discretion in how it executes the provisions of

14

Section 1226 provided it does so within the bounds of Section 1225(b)(2)(A)'s clear mandate to detain "applicants for admission" pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."

Enforcing that more specific mandate of Section 1225(b)(2)(A) does not render any of Section 1226 superfluous as to the Petitioner. Rather, it harmonizes the two provisions. At any rate, a "preference for avoiding surplusage constructions is not absolute," especially when the general/specific canon better harmonizes the apparently conflicting statutory provisions. *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004); *RadLAX Gateway Hotel*, 566 U.S. at 645; *see also Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better overall reading of the statute contains some redundancy."); *see also Castañon-Nava*, 175 F.4th at 877 (Kirsch, J., dissenting) ("The government's interpretation of § 1225(b)(2)(A) does not make the Laken Riley Act superfluous, and any overlap is understandable given that Congress passed the Act 'at a time when the Executive was still declining to exercise its full enforcement authority [under § 1225].'" (alteration in original) (quoting *Buenrostro-Mendez*, 166 F.4th at 505)).

Fourth, Petitioner argues that Respondent's application of Section 1225(b)(2)(A)'s mandatory detention provision not only to recent arrivals but also to unadmitted aliens already in the country like himself is "contrary to decades of agency practice applying § 1226(a) to people like [him]." Dkt. 9-1 at 3; *see also id.* at 11. However, the Court takes seriously its independent duty to

interpret the law as written, regardless of an agency's past practice. And "in cases where [a court's] own judgment . . . differ[s] from that of other high functionaries," the Court is "not at liberty to surrender, or to waive it.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (quoting *United States v. Dickson*, 40 U.S. (15 Pet.) 141, 162 (1841) (Story, J.)). Past practice aside, Respondent's interpretation of "seeking admission" is not entirely novel. *See Matter of Lemus-Losa*, 25 I. & N. Dec. at 743.

\* \* \*

Stepping back to consider the big picture, Petitioner's perspective on the meaning of Section 1225(b)(2)(A) necessarily implies that aliens who evade inspection and detention at a port of entry enjoy the privilege of a bond hearing while those who submit to inspection upon first arrival do not. As the Fifth Circuit explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to "reduce th[at] incongruity." *Buenrostro-Mendez*, 166 F.4th at 499; *see also Avila*, 170 F.4th at 1135–36; *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (explaining IIRIRA "did away with" the "anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully"). Nothing in the text of the statute suggests that the privilege of a bond hearing is based upon the arbitrary standard of avoiding inspection and living in the United States for an unspecified time.

Granting habeas relief on the premise that ICE does not have the statutory right to detain him—despite his non-admitted status—leads to the conclusion

16

that the force of Section 1225(b)(2)(A) arbitrarily dissipates with time.  And Petitioner argues this point explicitly.  Dkt. 9-1 at 11 (stating Respondents' application of Section 1225 "affects those who have resided in the United States for months, years, and even decades").  That is plainly not what Congress meant when it wrote "seeking admission" in Section 1225(b)(2)(A) or enacted the bond hearing provision in Section 1226(a).  It is also inconsistent with Congress's IIRIRA amendments and encourages the "perverse incentive to enter at an unlawful rather than a lawful location" against which the Supreme Court has warned.  *Thuraissigiam*, 591 U.S. at 140 ("Like an alien detained after arriving at a port of entry, an alien like respondent is 'on the threshold.'  The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." (citations omitted)).

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A).  As such, Respondents have not violated Section 1226(a) by detaining him without a bond hearing.  As he is not eligible for a discretionary bond hearing, the Court does not address his argument that he is entitled to immediate release.

## C.    **Administrative Procedure Act**

Petitioner further argues that Respondents' decision to revoke his parole without "mak[ing] a determination that the purpose of Petitioner's parole had been accomplished," and to detain him "without an individualized determination

17

regarding his parole status" (i.e., a bond hearing), constitute agency action that is an abuse of discretion in violation of the Administrative Procedure Act (APA). Dkt. 9-1 at 15. The Court disagrees on both fronts.

Under the APA, a reviewing court may hold unlawful and set aside "final agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 704, 706. The scope of the Court's "abuse of discretion" review is "narrow" and limited to whether the agency "examined the relevant data and articulated a satisfactory explanation for [its] decision, including a rational connection between the facts found and the choice made." *Dep't of Commerce v. New York*, 588 U.S. 752, 773 (2019); *see also Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024) (noting the court "reviews agency determinations with great deference" and "cannot substitute its judgment for that of the agency" (citations omitted)).

Petitioner entered the United States without inspection on or about December 12, 2022. Dkt. 9-1 at 13. He was apprehended upon entry by immigration authorities and paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). Dkt. 12 at 1; Dkt. 12-1; Dkt. 8-1 at 8. Under that statutory provision, the Secretary of Homeland Security may "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). The parole "shall not be regarded as an admission of the alien."

18

*Id.*; *see also Samirah v. O'Connell*, 335 F.3d 545, 547 (7th Cir. 2003) ("Although a paroled alien has 'liberty to roam the country,' the law considers him legally detained at the border within the government's custody until his immigration status is determined." (citation omitted)).

Moreover, "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). The regulations implementing 8 U.S.C. § 1182(d)(5) further provide that parole "shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1)(ii). At that time, the alien "shall be restored to the status that he . . . had at the time of parole." *Id.* § 212.5(e)(2)(i).

Respondents report, and Petitioner's exhibit corroborates, that Petitioner's parole automatically expired on February 13, 2023, after 60 days. Dkt. 13 at 1; Dkt. 12-1. The regulations did not require notification of that termination, let alone an individualized determination or hearing. *See Marc v. Olson*, No. 4:26-cv-00031-TWP-KMB, 2026 WL 498656, at *2 (S.D. Ind. Feb. 23, 2026) (discussing 8 C.F.R. § 212.5(e)(1)(ii) and noting "even if [alien habeas petitioner] was granted humanitarian parole, it terminated automatically . . . , and regulations do not appear to require notice, individualized determination, or hearing"). Moreover, upon termination, Petitioner was "restored to the status

19

that he . . . had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). Petitioner's status after February 13, 2023—and, accordingly, at the time of his re-detention in April 2026—was that of a noncitizen not admitted or paroled into the United States.

Petitioner argues that the revocation of his parole was unlawful because Respondents made no "showing of changed circumstances." Dkt. 9-1 at 7. But as established above, aliens present in the country without admission are "applicants for admission" and generally subject to *mandatory* detention pending removal proceedings under 8 U.S.C. § 1225(b)(2)(A). *See* Section II.B, *supra.* Petitioner is an applicant for admission, and, as Respondents argue, that status has never changed. Dkt. 13 at 3. Accordingly, he is subject to mandatory detention without bond pending removal proceedings. ICE's decision to detain Petitioner in April 2026 pending further immigration proceedings—despite his prior and expired parole—was not an abuse of discretion. *See* Dkt. 8-1 at 3. In fact, Section 1225(b)(2)(A) required that course of action.

**D.    Petitioner's current detention does not violate the Fifth Amendment.**

Finally, Petitioner argues his current detention violates the Fifth Amendment's Due Process Clause. *See* Dkt. 9-1 at 15–16. It does not.

Petitioner argues that the Due Process Clause entitles him to an opportunity to prove that he is neither a flight risk nor a danger to the community. Dkt. 9-1 at 16; Dkt. 12 at 10–11. However, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). That holding settles the issue. And this Court reached the same conclusion in a

previous action that is materially indistinguishable from this case. *Demir*, 2026 WL 706485, at *7–8.

Petitioner argues that due process requires an "individualized hearing" to determine "whether he poses a flight risk or a danger to the community." Dkt. 12 at 10. But the Supreme Court already anticipated this objection and rejected it: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. Applied to Petitioner, this means that Respondents do not have to justify mandatory detention on a case-by-case basis. Respondents may enforce the policy Congress already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Petitioner cites *Zadvydas* to support his argument, dkt. 9-1 at 16, but that case is distinguishable. There, the Supreme Court addressed whether a post-removal-period detention statute authorized potentially indefinite detention. In construing the statute to reject that conclusion, the Supreme Court specifically distinguished the due process issues inherent in the petitioner's indefinite detention from "detention pending a determination of removability," which has an "obvious termination point." *Zadvydas*, 533 U.S. at 697. Petitioner's detention here is a detention pending removal proceedings. Thus, it does not implicate the due process concerns addressed in *Zadvydas*.

And even in cases like *Zadvydas*—where the Supreme Court held that removal is "no longer practically attainable," *id.* at 690, thereby eliminating the

21

premise for detention pending removal—detention for up to six months was presumptively constitutional, *id.* at 701. Petitioner has been detained by ICE pending his removal proceedings for just over two months. Accordingly, Petitioner's current detention by ICE does not violate his due process rights.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner Jairo Manuel Castillo Cortes's motion to amend his Petition for Writ of Habeas Corpus, dkt. [9], **DENIES** his amended habeas petition, dkt. [9-1], and **DISMISSES** this case with prejudice. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: June 16, 2026

_____
Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email